IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**CAROL S. ALLDAY**                                                                         **PLAINTIFF**

**V.**                                            **CIVIL ACTION NO. 2:20CV115 TBM-LGI**

**KILOLO KIJAKAZI, ACTING**
**COMMISSIONER OF SOCIAL SECURITY**                         **DEFENDANT**

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Carol Allday appeals the final decision denying her applications for social security disability insurance benefits (DIB). The Commissioner requests an order pursuant to 42 U.S.C. § 405(g), affirming the final decision of the Administrative Law Judge. Having carefully considered the hearing transcript, the medical records in evidence, and all the applicable law, the undersigned recommends this cause be remanded.

In August 2015, Plaintiff filed a disability application alleging an onset date of September 12, 2013, due to chronic migraines, memory problems, fibromyalgia and spinal stenosis. Plaintiff was 50 years old on her onset date. She has a GED and past work experience as a unit secretary and pharmacy technician. Following agency denials of her application, an ALJ rendered an unfavorable decision finding that Plaintiff had not established a disability within the meaning of the Social Security Act. The Appeals Council granted Plaintiff's request for review and remanded the case to the ALJ, with instructions to further evaluate Plaintiff's disability claim.[1] Upon further review and a

---

[1] The Appeals Council specifically directed the ALJ to do as follows:

second administrative hearing, the ALJ issued a second unfavorable decision. The Appeals Council denied Plaintiff's second request for review. She now appeals that decision.

## Factual Background

The relevant medical evidence, detailed in the memorandum briefs and the ALJ's decision, will not be repeated in depth here. In 2013, Plaintiff experienced an allergic reaction after being administered Botox injections to treat her chronic migraines. She was working as a pharmacy technician at the time and was suffering from migraines multiple times a week. Despite treatment, the migraines were becoming increasingly worse. Plaintiff's symptoms, which come and go, include nausea, light sensitivity, low blood pressure, heart palpitations, increased sweating, memory loss, difficulty communicating, and tremors. After seeing numerous physicians, neurologists diagnosed Plaintiff with autonomic dysfunction. This condition, also known as autonomic neuropathy or dysautonomia, "refers to a disorder of the autonomic nervous system (ANS) function that generally involves failure of the sympathetic or parasympathetic

---

[E]valuate Plaintiff's mental impairments in accordance with the special technique described in 20 C.F.R. § 404.1520a, documenting application of the technique in the decision by providing specific findings and appropriate rationale for each of the functional areas described in 20 C.F.R. § 404.1520(c); and give further consideration to the claimant's maximum functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations. In so doing, evaluate the treating and non-treating source opinion pursuant to the provisions of 20 C.F.R. § 404.1527 and non-examining source opinion in accordance with the provisions of 20 C.F.R. § 404.1527, and explain the weight given to such opinion evidence. As appropriate, the ALJ Judge may request the treating and non-treating source to provide additional evidence and/or further clarification of the opinion.

components of the ANS, but dysautonomia involving excessive or overactive ANS action also can occur."[2] Dysautonomia "can be local as in reflex sympathetic dystrophy or generalized as in pure autonomic failure. It can be acute and reversible, as in Guillain-Barre syndrome, or chronic and progressive."[3]

In the months leading up to her second administrative hearing, Plaintiff was referred to a neuro-oncologist who prescribed various medications, but she testified that none had successfully alleviated her symptoms. She was continuing to experience migraines up to four times a week, with them lasting most of the day. She would also have difficulty standing and felt intense pressure when she leaned over. As treatment, in addition to prescription medications, Plaintiff alternates between taking Tylenol and Ibuprofen as well as ice and heat packs. When not suffering from migraines or other symptoms, Plaintiff testifies that she "piddl[es] around her house" and is able to do some household chores. She also attends church but does little driving.

After considering Plaintiff's testimony and subjective complaints, the ALJ concluded that the Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms was not consistent with the objective medical evidence. At step one of the five-step sequential evaluation,[4] the ALJ found that Plaintiff had not engaged

---

[2] https://www.ninds.nih.gov/Disorders/All-Disorders/Dysautonomia-Information-Page#disorders-r1 (last visited December 6, 2021).

[3] *Id.*

[4] Under C.F.R. § 404.1520, the steps of the sequential evaluation are: (1) Is plaintiff engaged in substantial gainful activity? (2) Does plaintiff have a severe impairment? (3) Does plaintiff's impairment(s) (or combination thereof) meet or equal an impairment listed in 20 C.F.R. Part 404, Sub-part P, Appendix 1? (4) Can plaintiff return to prior relevant work? (5) Is there any

in substantial gainful activity from her alleged onset date of September 12, 2013, through her date last insured of March 31, 2019.  At step two, the ALJ found that while Plaintiff's migraines with a related mood disorder were severe, they did not meet or medically equal any listing.  At step four, the ALJ found that through the date last insured, Plaintiff had the residual functional capacity to perform light work except for:

> . . . occasional[] climbing ladders/ropes/scaffolds, frequent climbing of ramps/stairs, balancing, stooping, crouching, kneeling and crawling. She should avoid concentrated exposure to dangerous moving machinery and unprotected heights. She should not work in an area with industrial type lighting, such as a runway or warehouse.  She should not engage in production or pace work.

Relying on vocational expert testimony, the ALJ concluded at step five that given Plaintiff's age, education, work experience, and residual functional capacity, she could perform her past relevant work as a unit secretary and pharmacy technician.

## Standard of Review

Judicial review in social security appeals is limited to two basic inquiries: (1) whether there is substantial evidence in the record to support the ALJ's decision; and (2) whether the decision comports with relevant legal standards.  *Salmond v. Berryhill*, 892 F.3d 812, 816 (5th Cir. 2018).  Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (internal quotation marks and citation omitted).  It must be more than a scintilla, but it

---

work in the national economy that plaintiff can perform?  *See also McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).

need not be a preponderance. *Id.* In reviewing an appeal, this Court may not re-weigh the evidence, try the case de novo, or substitute its judgment for that of the ALJ, even if it finds evidence that preponderates against the ALJ's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

## Discussion

Plaintiff asserts that the ALJ's residual functional capacity finding is not supported by substantial evidence and resulted in an erroneous determination that she could perform her past relevant work. As her primary argument in support, Plaintiff alleges that the ALJ failed to adequately consider evidence from her treating neuro-oncologist, Mark Anderson, M.D., who indicated that Plaintiff's headaches might be poorly controlled because of her autonomic dysfunction. The Commissioner counters that even if the ALJ's consideration of evidence from Dr. Anderson was deficient, Plaintiff fails to establish that the condition produced functional limitations beyond those set forth in her residual functional capacity. An ALJ's failure to consider evidence is ground for reversal or remand "only if the applicant can show prejudice." *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018). To establish prejudice, the plaintiff must show that the result might have been altered had the ALJ considered the evidence. *Id.* (citing *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996)). Having reviewed the entirety of the record, the undersigned submits that there are a number of unresolved conflicts that warrant remand for further consideration of this evidence.

It is well settled that the sole responsibility for determining a claimant's residual functional capacity rests with the ALJ. It is an administrative finding of fact, not a

medical opinion.  After providing a detailed summary of the evidence in the instant case, the ALJ explained his residual functional capacity determination as follows:

> . . . [T]he undersigned finds the claimant's allegations of total disability are not supported by the medical evidence of record. The medical evidence clearly documents the claimant's diagnosis of and treatment for migraine headaches with a related mood disorder, but with essentially normal findings on brain MRI and EEG.  It is noted that there were some occasional findings of memory impairment, but on two different occasions she had MMSE scores of 29/30.  There is also the conclusion of an examining physician that all her neurological complaints including the subjective memory loss were part of a psychogenic process with no more work-up of her memory changed offered.  Additionally, during a mental status evaluation, her recent memory was intact, immediate recall was adequate and attention and concentration were excellent. Additionally, from a mental standpoint there has been sporadic findings of some anxiety and depression that have apparently responded to treatment with medication as there is no documented need for treatment by a mental health professional or a mental health facility.  Accordingly, the undersigned finds that the evidence of record as a whole supports a functional ability to perform a light level of exertion with the additional balancing, stooping, crouching, kneeling, and crawling. She would avoid concentrated exposure to dangerous moving machinery and unprotected heights. She would not work in an area with industrial type lighting, such as that found in warehouses or runaways. She would not work in a job that required fast production or pace work.

In making this finding, the ALJ explained that he gave "some weight" to the state agency physicians who opined in 2016 that Plaintiff was capable of light exertion with occasional postural limitations so long as she never climbs ladders/ropes/scaffolds and avoids moderate exposure to hazards.  They also opined that Plaintiff was moderately limited in maintaining social functioning, concentration, persistence and pace, and mildly limited in her activities of daily living.  The physicians also concluded that Plaintiff could

complete a normal work week, while carrying out very short and simple instructions, without excessive interruptions from psychological symptoms. The ALJ explained that he assigned "some weight" to these assessments because they were consistent with the evidence of record "at that time," but that "extensive subsequent evidence and hearing testimony that were unavailable to these physicians support additional physical limitations and mental limitations, to a lesser degree, as reflected in the residual functional capacity." Though the ALJ's residual functional capacity determination includes limitations restricting Plaintiff from working in areas with industrial type lighting or requiring production or pace work, he did not specify precisely what additional limitations were warranted nor link them to any specific subsequent evidence.

The ALJ also assigned "some weight" to the consulting psychologist's opinion that Plaintiff could perform routine, repetitive tasks, interact with coworkers, and receive supervision because it was "consistent with the overall evidence of record." Unlike the agency physicians' assessments, however, the ALJ did not note that the consultative evaluation was performed in 2016, or that "extensive subsequent evidence and hearing testimony" warranted additional physical and mental limitations. Nor did the ALJ address the examiner's opinion that Plaintiff's prognosis was guarded and "depends to a great extent on her ability to manage her chronic migraines and chronic pain." The undersigned is mindful that the ALJ is not required to write a perfect opinion or to discuss every piece of evidence. *Hurst v. Colvin*, 639 F. App'x 1018, 1021 (5th Cir. 2016); *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007); *Castillo v. Barnhart*, 151 F. App'x 334, 335 (5th Cir. 2005). However, it is difficult to reconcile the ALJ's contention

7

that the consulting examiner's assessment was "consistent with the overall evidence of the record," while the agency physicians' assessments were only "consistent with the evidence *at the time*." All three assessments were rendered in 2016 and predate the "extensive subsequent evidence and hearing testimony" that the ALJ stated warranted additional physical and mental limitations.

In addition to this discrepancy, it is difficult to conduct a meaningful review of the ALJ's assessment of Plaintiff's dysautonomia and the evidence from her neuro-oncologist, Dr. Anderson. As Plaintiff points out, Dr. Anderson's treatment records reflect that Plaintiff's headaches were not well-managed or responsive to medication despite multiple medications being prescribed. *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987) (medical condition that can be reasonably remedied by treatment or medication is not disabling). At one point, Dr. Anderson indicates that Plaintiff's autonomic symptoms developed as a result of her Botox injections, and in his last visit of record, he suggests that Plaintiff's migraines "might be poorly controlled due to autonomic dysfunction" as well.

In 2017, the Social Security Administration revised its regulations for evaluating medical opinions. For claims filed after March 27, 2017, 20 C.F.R. § 404.1520(c) applies, and it provides, *inter alia*, that no specific evidentiary weight, including controlling weight, is to be given to medical opinions from treating sources. Under the new regulations, supportability and consistency of medical opinions are the most important factors, and ALJs may, but are no longer required to, explain how they

8

considered other factors. § 404.1520c (2019).[5] Because Plaintiff's application was filed prior to March 27, 2017, 20 C.F.R. § 404.1527(c) still governs her claim.

However, to the extent Plaintiff claims the ALJ erred in not conducting an analysis of Dr. Anderson's views using the § 404.1527(c) factors, the argument is unavailing. *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). Where, as here, an "evaluation simply outlines [the physician's] diagnoses and observations, leaving other personnel to draw conclusions about the implications for [the claimant's] RFC," the opinion does not meet the definition of "medical opinion" under 20 C.F.R. § 404.1527(a)(2). *Winston v. Berryhill*, 755 F. App'x 395, 402 (5th Cir. 2018). "[T]he definition of a 'medical opinion' requires both an evaluation of symptoms and an expression of judgment regarding a claimant's capabilities and restrictions. . . ." *Id.* at 403. While Dr. Anderson's statements evaluate Plaintiff's dysautonomia, he does not express a judgment as to Plaintiff's specific capabilities and restrictions. *See Winston*, 755 F. App'x at 402.

Notwithstanding, it is difficult to discern from the ALJ's narrative discussion the extent to which he considered Plaintiff's dysautonomia diagnosis and Dr. Anderson's records in evaluating the supportability and consistency of Plaintiff's subjective complaints and reported limitations. As noted *supra*, the ALJ assigned the greatest weight to the assessments issued by the agency physicians and consulting examiner in 2016. At that time, the psychological consultant opined that Plaintiff had essentially mild

---

[5] These factors require that an ALJ consider the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the supportability of the physician's opinion; the consistency of the opinion with the record as a whole; the specialization of the source; and, any other factors tending to support or contradict the physician's opinion.

limitations, but her prognosis was guarded and dependent "to a great extent on her ability to manage her chronic migraines and chronic pain." Medical records generated after the consultative examination, including those of Dr. Anderson, document her dysautonomia diagnosis and indicate that her migraines were not well-managed or even responsive to various prescription medications. As noted, Dr. Anderson specifically opined that they may be "poorly controlled due to autonomic dysfunction." Though the ALJ references Plaintiff's dysautonomia diagnosis and Dr. Anderson's records in his summary of the evidence, he did not address what significance this evidence had in his assessment of her credibility or her residual functional capacity.

This is particularly significant given the apparent episodic nature of dysautonomia, its late diagnosis, and how pivotal the discounting of Plaintiff's subjective statements regarding the severity of her symptoms was to the outcome. As other district courts have noted:

> The severity of the symptoms in people with dysautonomia are typically far out of proportion to any objective physical or laboratory findings (especially when the doctors don't know which findings to look for) . . . . Patients lucky enough to be taken seriously by their family doctors are likely to be referred to a specialist. The type of specialist they are sent to usually depends on the predominant symptom they are experiencing, or on the symptom that most impresses the family doctor. And the diagnosis they are ultimately given depends on their predominant symptoms and which specialist they end up seeing. Thus: Those whose main complaint is easy fatiguability are likely to be diagnosed with [chronic fatigue syndrome]. Those who pass out are labeled as vasovagal or neurocardiogenic syncope. . . . If dizziness on standing up is the chief problem, POTS is the diagnosis. Diarrhea or abdominal pain buys you irritable bowel syndrome. Pain elsewhere ends up being fibromyalgia.

*Powell v. Colvin*, No. 2:12-CV-03566-JHE, 2014 WL 2987663, at *4 (N.D. Ala. July 1, 2014); *Goodrich v. Comm'r of Soc. Sec.*, No. 6:10-CV-1818-ORL-28, 2012 WL 750291, at *11 (M.D. Fla. Feb. 7, 2012), *report and recommendation adopted,* No. 6:10-CV-1818-ORL-19, 2012 WL 760874 (M.D. Fla. Mar. 8, 2012) n. 7 (M.D. Fla. Feb. 7, 2012) (citing Richard N. Fogoros, http:// heartdisease.about.com/cs/ womensissues/a/; 6432; 6432dysautonomia.htm).

Relevant here, the ALJ noted the references to fibromyalgia and cervical disc disease in the record, but found the evidence was insufficient to support a finding that either impairment met the severity threshold at step two. Rather, the ALJ found that "most [of Plaintiff's] complaints were most likely related to dysautonomia." Yet, he did not undergo a severity analysis of this impairment at step two; and, in the subsequent steps of the sequential evaluation, the ALJ underscores more than once that the evidence indicates that "*all* [Plaintiff's] neurological complaints including the subjective memory loss were part of a psychogenic process." Such evidence not only predates Dr. Anderson's records and Plaintiff's dysautonomia diagnosis, but it contradicts the ALJ's observation at step two that most of Plaintiff's complaints were related to dysautonomia, a neurological condition. And while the mere diagnosis of an impairment is insufficient to establish disability,[6] it is unclear the extent to which the ALJ discounted Plaintiff's neurological complaints because they were thought to be part of a psychogenic process early on. The ALJ also cites to Plaintiff's daily activities and the normal examination

---

[6] *See Epps v. Harris*, 624 F.2d 1267, 1274 (5th Cir. 1980); *Johnson v. Heckler*, 767 F.2d 180, 182 (5th Cir. 1985).

11

findings of record as other bases for his adverse credibility determination, but it is not apparent that the ALJ fully considered the episodic nature of dysautonomia and the objective evidence showing Plaintiff's migraines were not responsive to medication. *Welch v. Colvin*, No. 3:14CV388-DPJ-LRA, 2015 WL 4940666, at *6 (S.D. Miss. July 29, 2015), *report and recommendation adopted,* No. 3:14-CV-388 DPJ-LRA, 2015 WL 4940666 (S.D. Miss. Aug. 19, 2015).

It may well be, as the Commissioner argues, that Plaintiff's dysautonomia does not produce functional limitations beyond those set forth in her residual functional capacity and that remand may very well result in the same conclusion. But without meaningful analysis from the ALJ regarding this evidence, the parties have been left to dispute its significance before this court. ALJs have a duty furthermore to develop a full and fair record and when the evidence is insufficient, contact a medical source for additional evidence or clarification. *Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) (citing *Cornett v. Astrue*, 261 F. App'x 644, 649 (5th Cir. 2008)). As the record stands, the Court cannot confidently conclude that there is sufficient evidence upon which to make the requisite determination. As noted *supra*, while Dr. Anderson's statements evaluate Plaintiff's dysautonomia, he does not express a judgment as to Plaintiff's specific capabilities and restrictions. *See Winston*, 755 F. App'x at 402. At a minimum on remand, the ALJ should order an updated consultative evaluation and/or contact Dr. Anderson for additional evidence under 20 C.F.R. § 404.1520b ("How we consider evidence") (explaining that to resolve inconsistency or insufficiency, the Commissioner

may re-contact medical source, request additional evidence, or order a consultative examination).

For all the above reasons, the undersigned recommends the ALJ's decision be remanded for further proceedings consistent with this decision.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Rule 72(a)(3) of the Local Uniform Civil Rules of the United States District Courts for the Southern District of Mississippi, any party may serve and file written objections, within 14 days after being served with a copy of this Report and Recommendation. Within 7 days of the service of the objection, the opposing party must either serve and file a response or notify the District Judge that he or she does not intend to respond to the objection.

The parties are hereby notified that failure to file timely written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation, shall bar that party from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, except upon grounds of plain error. 28 U.S.C. § 636, Fed. R. Civ. P. 72(b) (as amended, effective December 1, 2009); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

SO ORDERED on December 13, 2021.

s/ LaKeysha Greer Isaac<br>UNITED STATES MAGISTRATE JUDGE